UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION



MONSANTO COMPANY and )
MONSANTO TECHNOLOGY LLC, )
)
)
Plaintiffs, )
)
)
v. )
)
AMERICAN SEED COMPANY, INC. d/b/a )
AMERICAN SEED CO. d/b/a AMERICAN )
SEED CO. & CARLTON SNACK FOODS, )
)
Defendant. )

Cause No.

05CV0 0554E RW

## COMPLAINT

Plaintiffs Monsanto Company and Monsanto Technology LLC (collectively referred to

hereinafter as "Plaintiffs" or "Monsanto"), by and through their undersigned counsel, and for

their Complaint against American Seed Company, Inc. d/b/a American Seed Co. d/b/a American

Seed Co. & Carlton Snack Foods (hereinafter "Defendant," "American Seed Company, Inc." or

"American Seed"), state:

## THE PLAINTIFFS

1.      Monsanto Company is a company organized and existing under the laws of the

State of Delaware with its principal place of business in St. Louis, Missouri.  Monsanto

Company is authorized to do and is doing business in Missouri and in this judicial district.

Monsanto Company is in the business of developing, manufacturing, licensing and selling

agricultural biotechnology, agricultural chemicals and other agricultural products.

2.      Monsanto Technology LLC is a company organized and existing under the laws

of the State of Delaware with its principal place of business in St. Louis, Missouri.  Monsanto

2019166.10

Technology LLC is authorized to do and is doing business in Missouri and in this judicial district.

## THE DEFENDANT

3. Defendant American Seed Company, Inc. is a corporation organized and existing under the laws of the State of Pennsylvania with its principal place of business in the State of Pennsylvania.

## JURISDICTION AND VENUE

4. This Court has jurisdiction pursuant to 28 U.S.C. § 1332, as Plaintiffs and Defendant are citizens of different states and the amount in controversy exceeds $75,000.00 exclusive of interest and costs. Subject matter jurisdiction is also conferred upon this Court pursuant to 28 U.S.C. § 1331, in that one or more of Plaintiffs' claims arise under the laws of the United States, as well as 28 U.S.C. § 1338, granting district courts original jurisdiction over any civil action regarding patents. Additionally, this Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over Plaintiffs' non-federal question claims, such that they form part of the same case or controversy.

5. Venue is proper in this district pursuant to one or more forum selection clauses which were voluntarily agreed to by the Defendant American Seed, such clauses designating this Honorable Court as the exclusive forum for all disputes arising under the written agreements. *See* Exhibit 1 ("YieldGard® Corn Borer License Agreement") section 11.08; Exhibit 2 ("YieldGard® Rootworm License Agreement") section 11.08; Exhibit 3 ("Roundup Ready® Corn License Agreement") section 11.08; Exhibit 4 ("Roundup Ready® Corn 2 License Agreement") section 11.08; and Exhibit 5 ("Roundup Ready® Soybean License Agreement") section 11.08.

2019166.10

## GENERAL ALLEGATIONS

### A. BIOTECHNOLOGY

6.      After the investment of substantial time, expense, and expertise, Monsanto developed a new plant biotechnology that involves the transfer into crop seed of a gene that causes such seed to be resistant to Roundup® branded herbicides. Roundup® is a non-selective herbicide manufactured by Monsanto, which causes severe injury or crop destruction to soybean and corn varieties that are not Roundup Ready®. This technology has been utilized in several agricultural crops, including soybeans and corn. The genetically improved seeds are marketed by Monsanto as Roundup Ready® Soybeans and Roundup Ready® Corn and/or Roundup Ready® Corn 2.

7.      Monsanto's Roundup Ready® seed biotechnology is protected under patents issued by the United States Patent Office, including U.S. Patent Number 5,352,605 (the "'605 patent"), a true and accurate copy of which is attached hereto as Exhibit 6 and incorporated herein by reference. This patent was issued and assigned to Monsanto prior to the events giving rise to this action.

8.      After the investment of substantial time, expense, and expertise, Monsanto developed a new plant biotechnology that involves the transfer into crop seed of a gene for an insecticidal protein from a naturally occurring soil microorganism *Bacillus thuringiensis* (Bt.). YieldGard® biotechnology provides corn plants protection from various insects.

9.      Monsanto's YieldGard® gene technology is protected under patents issued by the United States Patent Office, including, U.S. Patent No. 5,352,605. This patent was issued or transferred to Monsanto prior to the events giving rise to this action.

10. In addition to the above-referenced patent rights, Monsanto possesses proprietary information necessary for the commercialization of corn and soybean seed products, which is not generally publicly known ("Monsanto Know-How").

## B. SEED LICENSE AND SERVICE AGREEMENTS

11. Monsanto licenses the use of Roundup Ready® and YieldGard® seed technology to corn and soybean producers at the retail marketing level through the use of Seed License and Service Agreements ("Seed License Agreements").

12. Pursuant to the terms of the Seed License Agreements, producers of Roundup Ready® and YieldGard® crop seed (collectively referred to "Licensed Crop Seed") are required to pay a license fee otherwise referred to as a Grower Fee or a Royalty for each commercial unit of Licensed Crop Seed sold.

13. Pursuant to the terms of the Seed License Agreements, producers of Roundup Ready® and YieldGard® crop seed are required to provide periodic reporting to Monsanto detailing the amounts of Licensed Crop Seed sold along with detailed information identifying each purchaser of Licensed Crop Seed.

14. Defendant American Seed, a seed business, desired to acquire a limited license to use Monsanto's patent rights and access to Monsanto Know-How related to the patents, patent applications and the Roundup Ready® and YieldGard® seed technology.

15. On or about March 22, 1999, Monsanto and Defendant American Seed, for valuable consideration, entered into a written agreement whereby Monsanto granted Defendant American Seed a non-exclusive license to Monsanto patent rights and Monsanto Know-How to develop, produce, have produced, and sell licensed YieldGard® corn seed (n.k.a. YieldGard® Corn Borer corn seed) to corn growers licensed by Monsanto. A true and accurate copy of the

2019166.10

YieldGard® Corn License and Seed Services Agreement ("YieldGard® Corn Borer License Agreement") between Monsanto and Defendant American Seed is attached hereto as Exhibit 1 (filed under seal) and is incorporated herein as if fully set forth.

16. On or about July 7, 2000, Monsanto and Defendant American Seed, for valuable consideration, entered into a written agreement whereby Monsanto granted Defendant American Seed a non-exclusive license to Monsanto patent rights and Monsanto Know-How to develop, produce, have produced, and sell licensed MaxGard™ corn seed (n.k.a. YieldGard® Rootworm corn seed) to corn growers licensed by Monsanto. A true and accurate copy of the MaxGard™ Corn License and Seed Services Agreement ("YieldGard® Rootworm License Agreement") between Monsanto and Defendant American Seed is attached hereto as Exhibit 2 (filed under seal) and is incorporated herein as if fully set forth.

17. On or about March 22, 1999, Monsanto and Defendant American Seed, for valuable consideration, entered into a written agreement whereby Monsanto granted Defendant American Seed a non-exclusive license to Monsanto patent rights and Monsanto Know-How to develop, produce, have produced, and sell licensed Roundup Ready® corn seed to corn growers licensed by Monsanto. A true and accurate copy of the Roundup Ready® Corn License and Seed Services Agreement ("Roundup Ready® Corn License Agreement") between Monsanto and Defendant American Seed is attached hereto as Exhibit 3 (filed under seal) and is incorporated herein as if fully set forth.

18. On or about April 4, 2000, Monsanto and Defendant American Seed, for valuable consideration, entered into a written agreement whereby Monsanto granted Defendant American Seed a non-exclusive license to Monsanto patent rights and Monsanto Know-How to develop, produce, have produced, and sell licensed Roundup Ready® (NK603) corn seed (n.k.a. Roundup

2019166.10

Ready® Corn 2) to corn growers licensed by Monsanto. A true and accurate copy of the Roundup Ready® Corn License and Seed Services Agreement ("Roundup Ready® Corn 2 License Agreement") between Monsanto and Defendant American Seed is attached hereto as Exhibit 4 (filed under seal) and is incorporated herein as if fully set forth.

19. On or about August 27, 2001, Monsanto and Defendant American Seed, for valuable consideration, entered into a written agreement whereby Monsanto granted Defendant American Seed a non-exclusive license to Monsanto patent rights and Monsanto Know-How to develop, produce, have produced, and sell licensed Roundup Ready® soybean seed to soybean growers licensed by Monsanto. A true and accurate copy of the Roundup Ready® Soybean License and Seed Services Agreement ("Roundup Ready® Soybean License Agreement") between Monsanto and Defendant American Seed is attached hereto as Exhibit 5 (filed under seal) and is incorporated herein as if fully set forth.

20. Pursuant to the terms of the licensing agreements detailed in paragraphs 15-19 immediately above (collectively referred to hereinafter at "Seed License Agreements"), Defendant American Seed was obligated to satisfy several reporting requirements, including, but not limited to, quarterly sales reporting, and grower point of sale reporting (a.k.a. GPOS reporting), such GPOS reporting to be provided no later than September 25th of each year. *See* Exhibit 1 section 4.04(a), Exhibit 2 section 4.04(a), Exhibit 3 section 4.04(a), Exhibit 4 section 4.04(a) and Exhibit 5 section 4.03(a).

## C. TRADEMARKS

21. Roundup Ready® and YieldGard® are registered trademarks of Monsanto Technology LLC ("Monsanto LLC").

22. For more than five years, Monsanto Company and/or Monsanto LLC have been

using the Roundup Ready® name and trademark (the "Roundup Ready Mark") in connection with its agricultural products.

23.　For more than five years, Monsanto has been using the YieldGard® name and trademark (the "YieldGard Mark") in connection with its agricultural products.

24.　Monsanto invests millions of dollars each year in national advertising and direct marketing of the Roundup Ready Mark and YieldGard Mark. Monsanto advertises through a variety of media, including television, radio, newspapers, and direct mail across the country. Monsanto also promotes the Roundup Ready Mark and YieldGard Mark on its website at www.monsanto.com.

25.　As a result of Monsanto's advertising and promotional efforts and its continuous use of the Roundup Ready Mark and YieldGard Mark, these trademarks have become famous nationwide.

26.　To enhance its trademark rights, Monsanto has obtained several federal trademark registrations for marks incorporating "ROUNDUP READY", many of which are incontestable:

- ROUNDUP READY, U.S. Registration No. 1889104. Registered on April 11, 1995, for, among other things, "herbicide-tolerant genes for use in the production of agriculture seed", based on first use in commerce of 1994.

- ROUNDUP READY, U.S. Registration No. 2101872. Registered on September 30, 1997, for, among other things, "agricultural seed", Based on first use in commerce of 1996.

- ROUNDUP READY, U.S. Registration No. 2302733. Registered on December 21, 1999, for, among other things, "planting or propagating materials for forestry, horticulture, and agricultural plants", based on first use in commerce of 1996.

27.　To enhance its trademark rights, Monsanto has obtained several federal trademark registrations for marks incorporating "YIELDGARD", many of which are incontestable:

- YIELDGARD, U.S. Registration No. 2095766. Registered on September 9, 1999,

2019166.10

for, among other things, "agricultural seed, namely, corn seed containing insect-tolerant genes", based on first commercial use in 1997.

- YIELDGARD, U.S. Registration No. 2257441. Registered on June 29, 1999, for, among other things, "insect-tolerant genes for use in the production of agricultural seed", based on first commercial use in 1997.

- YIELDGARD, U.S. Registration No. 2103941. Registered on October 7, 1997, for, among other things, "agricultural seed, namely corn seed, containing insect-tolerant genes", based on first commercial use in 1997.

## D. DEFENDANT AMERICAN SEED'S SEED LICENSE AGREEMENTS

28.     Pursuant to the terms of Defendant American Seed's Seed License Agreements with Monsanto, Defendant American Seed was obligated to remit quarterly sales reporting no later than January 15, 2004 relating to its sales and/or transfers of Roundup Ready® corn and/or soybean seed and/or YieldGard® corn seed during the first 2004 Fiscal Year quarter.

29.     Defendant American Seed committed a material breach of its obligations when it failed to remit quarterly sales reporting on or before January 15, 2004 relating to its sales and/or transfers of Roundup Ready® corn and/or soybean seed and/or YieldGard® corn seed during the first 2004 Fiscal Year quarter.

30.     Pursuant to the terms of Defendant American Seed's Seed License Agreements with Monsanto, Defendant American Seed was obligated to remit quarterly sales reporting no later than March 15, 2004 relating to its sales and/or transfers of Roundup Ready® corn and/or soybean seed and/or YieldGard® corn seed during the second 2004 Fiscal Year quarter.

31.     Defendant American Seed committed a material breach of its obligations when it failed to remit quarterly sales reporting on or before March 15, 2004 relating to its sales and/or transfers of Roundup Ready® corn and/or soybean seed and/or YieldGard® corn seed during the second 2004 Fiscal Year quarter.

32.     Pursuant to the terms of Defendant American Seed's Seed License Agreements

with Monsanto, Defendant American Seed was obligated to remit quarterly sales reporting no later than June 15, 2004 relating to its sales and/or transfers of Roundup Ready® corn and/or soybean seed and/or YieldGard® corn seed during the third 2004 Fiscal Year quarter.

33. Defendant American Seed committed a material breach of its obligations when it failed to remit quarterly sales reporting on or before June 15, 2004 relating to its sales and/or transfers of Roundup Ready® corn and/or soybean seed and/or YieldGard® corn seed during the third 2004 Fiscal Year quarter.

34. Pursuant to the terms of Defendant American Seed's Seed License Agreements with Monsanto, Defendant American Seed was obligated to remit quarterly sales reporting no later than September 15, 2004 relating to its sales and/or transfers of Roundup Ready® corn and/or soybean seed and/or YieldGard® corn seed during the fourth 2004 Fiscal Year quarter, along with such information for the entire Fiscal Year ending on August 31, 2004.

35. Defendant American Seed committed a material breach of its obligations when it failed to remit quarterly sales reporting on or before September 15, 2004 relating to its sales and/or transfers of Roundup Ready® corn and/or soybean seed and/or YieldGard® corn seed during the fourth 2004 Fiscal Year quarter, along with such information for the entire Fiscal Year ending on August 31, 2004.

36. Pursuant to the terms of Defendant American Seed's Seed License Agreements with Monsanto, Defendant American Seed was obligated to remit Grower Point Of Sale reporting to Monsanto no later than September 15, 2004 relating to its sales and/or transfers of Roundup Ready® corn and/or soybean seed and/or YieldGard® corn seed during fourth 2004 Fiscal Year quarter, along with such information for the entire Fiscal Year ending on August 31, 2004.

2019166.10

37. Defendant American Seed committed a material breach of its obligations when it failed to remit Grower Point Of Sale reporting on or before September 15, 2004 relating to its sales and/or transfers of Roundup Ready® corn and/or soybean seed and/or YieldGard® corn seed during the fourth 2004 Fiscal Year quarter, along with such information for the entire Fiscal Year ending on August 31, 2004.

38. Between its first material breach on January 15, 2004 and December 31, 2004, Defendant American Seed was provided notice of one or more of its breaches and was requested to provide sales and GPOS information.

39. Pursuant to the terms of Defendant American Seed's Seed License Agreements with Monsanto, Defendant American Seed was obligated to remit quarterly sales reporting no later than January 15, 2005 relating to its sales and/or transfers of Roundup Ready® corn and/or soybean seed and/or YieldGard® corn seed during the first 2005 Fiscal Year quarter.

40. Defendant American Seed committed a material breach of its obligations when it failed to remit quarterly sales reporting on or before January 15, 2005 relating to its sales and/or transfers of Roundup Ready® corn and/or soybean seed and/or YieldGard® corn seed during the first 2005 Fiscal Year quarter.

41. On or about February 11, 2005, Defendant American Seed was provided written notice of its breach of and/or default under the terms of the Licensing Agreements and it was provided a written demand to cure such breaches and/or defaults.

42. On or about March 17, 2005, due to Defendant American Seed's breaches, including but not limited to, non-remittance of Grower Point Of Sale reporting, and its failure to cure such breaches, Monsanto terminated all of Defendant American Seed's Seed License Agreements.

2019166.10

43.     After March 17, 2005, Defendant American Seed had no license or authority from Monsanto to make, use, sell or offer for sale, transfer or offer for transfer any Roundup Ready® or YieldGard® crop seed.

44.     Upon information and belief, Defendant American Seed has been advertising (including on its website www.americanseedco.com), selling and/or transferring Roundup Ready® and/or YieldGard® crop seed to the public.

## COUNT I – BREACH OF CONTRACT

45.     Each and every material allegation set forth in the above numbered paragraphs is hereby incorporated by reference just as if it were explicitly set forth hereunder.

46.     Between March 22, 1999 and August 27, 2001 Defendant American Seed entered into its Seed License Agreements with Monsanto.

47.     Monsanto has duly performed any and all conditions under the Seed License Agreements.

48.     On January 15th, March 15th, June 15th and September 15th, Defendant American Seed was obligated to remit sales reporting for each Fiscal Year quarter.

49.     Defendant American Seed committed a material breach of the obligations detailed immediately above by failing to submit such sales reporting on or before the date is was due.

50.     No later than September 15, 2004, Defendant American Seed was obligated to remit Grower Point Of Sale reporting to Monsanto relating to its sales and/or transfers of Roundup Ready® corn and/or soybean seed and/or YieldGard® corn seed during the fourth 2004 Fiscal Year, along with such information for the entire Fiscal Year ending on August 31, 2004.

51.     Defendant American Seed committed a material breach of its Seed License Agreements with Monsanto when if failed to remit Grower Point Of Sale reporting to Monsanto

2019166.10

relating to its sales and/or transfers of Roundup Ready® corn and/or soybean seed and/or YieldGard® corn seed during the 2004 Fiscal Year ending on August 31, 2004 by September 15, 2004.

52. Since the date of Defendant American Seed's breach, Monsanto has made numerous demands upon Defendant American Seed for remittance of Grower Point Of Sale reporting to Monsanto relating to its sales and/or transfers of Roundup Ready® corn and/or soybean seed and/or YieldGard® corn seed during the 2004 Fiscal Year ending on August 31, 2004.

53. To date, Defendant American Seed has not remitted Grower Point Of Sale reporting to Monsanto relating to its sales and/or transfers of Roundup Ready® corn and/or soybean seed and/or YieldGard® corn seed during the 2004 Fiscal Year ending on August 31, 2004.

54. The conduct of Defendant American Seed as set forth above is a breach of the Seed License Agreements between Monsanto and Defendant American Seed.

55. As a direct and proximate result of this breach, Monsanto is entitled to damages in an amount to be proven at trial, plus its reasonable attorneys' fees and costs as provided for in the Seed License Agreements. *See* Exhibit 1 section 11.12, Exhibit 2 section 11.12, Exhibit 3 section 11.12, Exhibit 4 section 11.12 and Exhibit 5 section 11.12.

56. Monsanto further prays that the Court grant it the remedy of specific performance and that the Court enter an order directing Defendant American Seed to immediately provide Grower Point Of Sale reporting to Monsanto relating to its sales and/or transfers of Roundup Ready® corn and/or soybean seed and/or YieldGard® corn seed during the 2004 Fiscal Year ending on August 31, 2004.

## COUNT II - PATENT INFRINGEMENT - PATENT NO. 5,352,605

57.     Each and every material allegation set forth in the above numbered paragraphs is hereby incorporated by reference just as if it were explicitly set forth hereunder.

58.     On October 4, 1994, United States Patent No. 5,352,605 ("the '605 patent") was duly and legally issued for an invention in Chimeric Genes for Transforming Plant Cells Using Viral Promoters, and since that date, Monsanto has been and still is the owner of that patent. *See* Exhibit 6. This invention is in the fields of genetic engineering and plant biology.

59.     One or more claims of the '605 patent encompass crop seed containing the Roundup Ready® and/or YieldGard® traits.

60.     On March 17, 2005, Monsanto terminated Defendant American Seed's Seed License Agreements, including, but not limited to the following agreements: YieldGard® Corn Borer License Agreement, YieldGard® Rootworm License Agreement, Roundup Ready® Corn License Agreement, Roundup Ready® Corn 2 License Agreement, and Roundup Ready® Soybean License Agreement, as a result of, *inter alia*, Defendant American Seed's breach of its sales and GPOS reporting obligations arising thereunder.

61.     On March 17, 2005, Monsanto informed Defendant American Seed that it was no longer a licensee of Monsanto and no longer had any right or privilege to, by any means or for any purpose, acquire, produce, make, use, develop, grow, sell, offer for sale, or transfer, any Roundup Ready® soybean seed, YieldGard® corn seed, or Roundup Ready® corn seed.

62.     Without authorization or license, Defendant American Seed has made, used, sold, offered to sell, transferred and offered to transfer Monsanto's patented inventions within the United States during the term of Patent No. 5,352,605, and in violation of 35 U.S.C. § 271.

2019166.10

63.     Defendant American Seed has and is still infringing Monsanto's '605 patent by using, conditioning, selling, offering to sell, transferring or otherwise offering to transfer unlicensed Roundup Ready® seed and/or YieldGard® seed embodying the patented invention without authorization from Monsanto and will continue to do so unless enjoined by this Court.

64.     Defendant American Seed's infringing activities were undertaken in full knowledge and with notice that Defendant was in violation of Monsanto's patent rights.

65.     Pursuant to 35 U.S.C. § 283, Monsanto is entitled to injunctive relief in accordance with the principles of equity to prevent the infringement of rights secured by the '605 patent.

66.     Pursuant to 35 U.S.C. § 284, Monsanto is entitled to damages adequate to compensate for the infringement, although in no event less than a reasonable royalty, together with such interest and costs to be taxed to Defendant American Seed.  Monsanto requests that these damages be trebled in light of Defendant's knowing, willful, deliberate and conscious infringement of the patent rights at issue and that, pursuant to 35 U.S.C. § 285, Monsanto recover its reasonable attorneys' fees since this is an exceptional case.

## COUNT III – TRADEMARK INFRINGEMENT UNDER SECTION 32 OF THE LANHAM ACT

67.     Each and every material allegation set forth in the above-numbered paragraphs is hereby incorporated by reference just as if it were explicitly set forth hereunder.

68.     Section 32(1)(a) of the Lanham Act, 15 U.S.C. § 1114(1)(a), prohibits the use in commerce, without the consent of registrant, of

> any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, to cause mistake, or to deceive.

*See* section 32(1)(a) of the Lanham Act, 15 U.S.C. § 1114(1)(a).

69. With full knowledge of Plaintiffs' rights in the Roundup Ready Mark and YieldGard Mark, Defendant American Seed used the identical Roundup Ready Mark and YieldGard Mark in commerce in connection with his offer to sell soybean and corn seed that was in fact not produced by Plaintiffs or any of their authorized licensees.

70. Defendant American Seed's use of the Roundup Ready Mark and YieldGard Mark is likely to cause confusion among consumers.

71. Defendant American Seed used the Roundup Ready Mark and YieldGard Mark willfully and for the purpose of usurping the good will associated with the Roundup Ready Mark and YieldGard Mark so as to deceive consumers.

72. Defendant American Seed's use of the Roundup Ready Mark and YieldGard Mark thus infringes the federally registered Roundup Ready Mark and YieldGard Mark in violation of Section 32(1)(a) of the Lanham Act.

73. Defendant American Seed willfully and maliciously infringed upon and injured Plaintiffs' trademark rights.

74. Plaintiffs have been, and absent injunctive relief, will continue to be irreparably harmed by Defendant American Seed's aforementioned actions, and has further suffered monetary damages in an amount to be determined at trial.

## COUNT IV - FALSE DESIGNATION OF ORIGIN AND UNFAIR COMPETITION UNDER SECTION 43(A) OF THE LANHAM ACT

75. Each and every material allegation set forth in the above-numbered paragraphs is hereby incorporated by reference just as if it were explicitly set forth hereunder.

76. Section 43(a)(1) of the Lanham Act, 15 U.S.C. § 1125(a)(1), provides, in pertinent part, that,

Any person who, on or in connection with any goods or services... uses in

commerce any word, term, symbol, or device, or any combination thereof, or any false designation of origin,... which (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person... shall be liable in an civil action by any person who believes that he or she is or is likely to be damaged by such act.

*See* section 43(a)(1) of the Lanham Act, 15 U.S.C. § 1125(a)(1).

77. By placing an advertisement on its internet site and its commercial brochures for the sale of Roundup Ready® soybean seed, Roundup Ready® corn seed, and YieldGard® corn seed, Defendant American Seed has falsely represented that the soybean and corn seed that it offered for sale was produced by Monsanto or one of its authorized licensees.

78. Defendant American Seed's conduct in this regard has caused and is likely to continue to cause consumer confusion, mistake, and/or deception as to Defendant American Seed's affiliation, connection, or association with Monsanto and/or its agricultural products and services.

79. Defendant American Seed's actions in this regard were taken willfully and maliciously.

80. Through the acts described above, Defendant American Seed has engaged in statutory unfair competition in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

81. In engaging in the foregoing conduct, Defendant American Seed willfully and maliciously injured Plaintiffs' property rights.

82. Plaintiffs have been, and absent injunctive relief, will continue to be irreparably harmed by Defendant American Seed's aforementioned actions, and have further suffered monetary damages in an amount to be determined at trial.

## COUNT V - DILUTION UNDER SECTION 43(C) OF THE LANHAM ACT

83. Each and every material allegation set forth in the above-numbered paragraphs is hereby incorporated by reference just as if it were explicitly set forth hereunder.

84. The Roundup Ready Mark and YieldGard Marks are famous nationwide. Plaintiffs have used the Roundup Ready Mark for more than five years in conjunction with their agricultural products and services. Plaintiffs advertise the Roundup Ready and YieldGard Mark extensively across the country through a variety of media. The Roundup Ready and YieldGard Marks are inherently distinctive and have garnered widespread public recognition throughout the United States. Moreover, the Roundup Ready and YieldGard Marks are the subject of several federal registrations, entitling Plaintiffs to nationwide rights in the Roundup Ready and YieldGard Marks.

85. Defendant American Seed's use of the Roundup Ready Mark and YieldGard Mark occurred long after the Roundup Ready Mark and YieldGard Mark became famous.

86. Defendant American Seed's advertisement and use of the Roundup Ready Mark and YieldGard Mark in connection with the sale of seeds constitutes "commercial use in commerce."

87. Defendant American Seed's use of the Roundup Ready Mark and YieldGard Mark has diluted and will continue to dilute the distinctiveness of the Roundup Ready Mark and YieldGard Mark in violation of Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c).

88. Specifically, Defendant American Seed's use of the Roundup Ready Mark and YieldGard Mark will tarnish the goodwill and reputation associated with the famous Roundup Ready Mark and YieldGard Mark, by improperly associating the Roundup Ready Mark and YieldGard Mark with Defendant American Seed's seeds and improper activities.

89. Plaintiffs have been and, absent injunctive relief, will continue to be irreparably harmed by Defendant American Seed's aforementioned actions, and have further suffered monetary damages in an amount to be determined at trial.

90. Defendant American Seed willfully and maliciously diluted Plaintiffs' Roundup Ready Mark and YieldGard Mark.

## COUNT VI - COMMON LAW TRADEMARK INFRINGEMENT

91. Each and every material allegation set forth in the above-numbered paragraphs is hereby incorporated by reference just as if it were explicitly set forth hereunder.

92. By the acts described above, Defendant American Seed has engaged in trademark infringement under the common law.

93. Defendant American Seed willfully undertook the aforementioned actions with the specific intent to trade on the reputation and goodwill associated with the Roundup Ready Mark and YieldGard Marks, and to cause confusion regarding the source and origin of Defendant American Seed's seed.

94. In undertaking the foregoing actions, Defendant American Seed willfully and maliciously injured Plaintiffs' property rights.

95. Plaintiffs have been and, absent injunctive relief, will continue to be irreparably harmed by Defendant American Seed's aforementioned actions, and have further suffered monetary damages in an amount to be determined at trial.

96. Plaintiffs are also entitled to an award of punitive damages in an amount to be determined at trial.

2019166.10

## COUNT VII - UNJUST ENRICHMENT

97. Each and every allegation set forth in the above-numbered paragraphs is hereby incorporated by reference just as if it were explicitly set forth hereunder.

98. Defendant American Seed's conduct, as described in the above-numbered paragraphs, has resulted in a benefit being conferred upon Defendant American Seed and Defendant American Seed's appreciation of the benefit, in that, Defendant American Seed illegally made, sold and offered to sell, or otherwise transferred unlicensed Roundup Ready® soybean seed, Roundup Ready® corn seed, and/or YieldGard® corn seed, after March 17, 2005 in contravention of Monsanto's patent rights.

99. Defendant American Seed produced, sold or otherwise transferred unlicensed Roundup Ready® soybean seed, Roundup Ready® corn seed, and/or YieldGard® corn seed, after March 17, 2005 without authorization from Monsanto and garnered illicit revenues from its sale and/or transfer of such crop seed.

100. As a result, Defendant American Seed has been unjustly enriched and obtained profits that in equity and good conscience belong to Monsanto.

101. Defendant American Seed's acceptance and retention of this benefit under the circumstances renders Defendant American Seed's retention of these benefits inequitable.

102. As a result, Monsanto is entitled to damages in an amount equal to the gross revenue obtained by Defendant American Seed by virtue of its unauthorized sale and/or transfer of Roundup Ready® soybean seed, Roundup Ready® corn seed, and YieldGard® corn seed after the March 17, 2005 termination of its Seed License Agreements.

## **PRAYER FOR RELIEF**

WHEREFORE, Monsanto Company and Monsanto Technology LLC request judgment

in their favor and against Defendant American Seed, providing the following remedies:

- a. A protective order prohibiting Defendant from:

    - (1) selling, destroying, tampering, or engaging in any other action or activity which may result in the destruction or spoliation of any seed containing Monsanto's Roundup Ready® or YieldGard® technology which are either stored or controlled by Defendant or are presently growing in fields owned, leased, operated, controlled or otherwise farmed by Defendant or on their behalf;

    - (2) removing, storing, collecting, transporting or obtaining in any other manner additional seed containing Monsanto's Roundup Ready® or YieldGard® technology; and

    - (3) any action that would hinder Monsanto's ability to discover all stored or controlled seed and identify any planted soybean and corn fields presently owned, leased, operated, controlled or farmed by the Defendant or on its behalf for the purpose of conducting confirmation testing for the presence of Monsanto proprietary gene technology.

- b. Entry of judgment for damages, together with interest and costs, to compensate Monsanto for Defendant's patent infringement;

- c. Trebling of damage awarded for Defendant's patent infringement, together with reasonable attorneys' fees and costs;

- d. Entry of an order prohibiting Defendant from making, using, planting, transferring or selling infringing articles to any third party;

- e. Entry of judgment for damages, together with interest and costs, to compensate Monsanto for Defendant American Seed's breach of contract;

- f. Entry of judgment granting the relief of specific performance. Such order to order Defendant American Seed to immediately provide Monsanto all reporting information, including, but not limited to, Fiscal Year 2004 and 2005 sales and GPOS information;

- g. Entry of a permanent injunction against Defendant to prevent Defendant from making, using, planting, selling, or offering to sell or otherwise transferring any

Roundup Ready®, YieldGard® or other proprietary Monsanto seed technology in order to protect against future infringement of Monsanto's rights secured by its patents;

h.    Entry of judgment for damages, together with interest and costs to compensate Monsanto for Defendant American Seed's unjust enrichment and the profits obtained that in equity and good conscience belong to Monsanto;

i.    Entry of judgment that Defendant American Seed has violated Section 32(a) of the Lanham Act, 15 U.S.C. § 1114(a) and Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) and (c);

j.    Entry of judgment that Defendant's use of the Roundup Ready Mark and YieldGard Mark constitutes trademark infringement under the common law;

k.    Entry of judgment of an award of damages suffered by Plaintiffs including an award of Plaintiffs' lost profits, other damages, costs, and attorneys' fees to the full extent provided by Section 35 of the Lanham Act, 15 U.S.C. § 1117; for treble damages and attorneys' fees pursuant to 15 U.S.C. § 1117(a); and for punitive damages under the common law;

l.    Entry of an injunction permanently restraining and enjoining Defendant American Seed from using the Roundup Ready Mark, YieldGard Mark or any mark(s) confusingly similar thereto; and

m.    For such other and further as the Court shall deem appropriate.

Respectfully submitted,

HUSCH & EPPENBERGER, LLC

By:  _____

Joseph C. Orlet, # 4001
Matthew R. Grant, #102009
190 Carondelet Plaza, Suite 600
St. Louis, MO 63105
(314) 480-1500
(314) 480-1505 (fax)

Attorneys for Plaintiffs Monsanto Company and
Monsanto Technology LLC

**Serve Defendant American Seed at:**

**6051 Carlton Ave.**
**Spring Grove, PA 17362**

2019166.10